## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA**

**v.**                                        **CASE #:    8:15-CR-21-T-35AEP**

**SIDNEY ENRIQUE ANAY-CASTILLO**

_____/

### UNSETTLED OBJECTION

**Mr. Anay-Castillo is eligible for consideration under USSG § 3B1.2 as a minor**

**participant and moves this court for a mitigating role departure.**

A district court, when considering role in an offense, "[f]irst, and most importantly, … must measure the defendant's role against the relevant conduct for which he was held accountable at sentencing. *United States v. DeVaron,* 175 F.3d 930 (11th Cir. 1999)(*en banc).* The Court may also measure the defendant's role against the other participants, to the extent that they are discernable, in that relevant conduct. *Id.* at 945. For couriers, the court may consider the "amount of drugs, fair market value of drugs, amount of money to be paid to the courier, equity interest in the drugs, role in planning the criminal scheme, and role in the distribution." *Id.* at 945. Mr. Anay-Castillo is held responsible for "approximately 725 kilograms of cocaine," the entire amount found on the drug boat he was on. *Plea Agreement,* P. 19, ¶ 11. Considering *DeVaron*, Mr. Anay-Castillo should receive a two level mitigating role adjustment after considering the aforementioned and the following.

The Defendant in *U.S. v. Vicente Fernandez,* 312 F. Supp. 2d 522 (S.D. NY 2004) received a minor role decrease after conviction for conspiracy to import over one kilogram of heroin. The Court considered that Defendant was a courier lacking

knowledge of the drug type and quantity, had no decision–making authority, and did not have a relationship or commitment to the other conspirators. *Id.* The Court explained that in a drug conspiracy the bulk of the conspiracy is conducted at the manufacturing and distribution polar ends of the operation. *Id.* at 524. Unlike other roles, courier is a fungible role, replaceable without consequence. *Id.* at 525.

*US v. Quinones-Medina,* 553 F.3d 19 (1st Cir. 2009) distinguishes when a courier is not entitled to a minor role reduction. In *Quinones,* Defendant's interaction with an undercover agent established that he was a full-fledged participant, rather than a simple courier. The defendant attended two face-to-face meetings with a purchaser where they discussed cocaine sales and later the transport of additional contraband. In essence, the defendant in *Quinones* acted as a business broker, thereby taking on more responsibility. Defendant's failure to appear with drugs on an agreed upon date resulted in additional negotiations, thereby injecting himself more into the conspiracy. Because of defendant's planning and negotiating, the *Quinones* Court did not consider him to be a minor participant.

In *US v. Leon,* 236 Fed. Appx. 719 (2d. Cir. 2007) the defendant was considered a willing participant in his conspiracy and wasn't coerced into serving as a "delivery man." The Defendant repeatedly solicited a government informant for heroin business and was not less culpable than the average participant and as such, was not a minor participant. *Id.*

Following the theme that more is needed than mere transportation of drugs to preclude a minor role adjustment, *U.S. v. Murillo-Palos,* 385 Fed. Appx. 176 (3d Cir. 2010) held a defendant ineligible for minor role. Evidence showed that defendant

partook in two large drug transactions where he was entrusted with $200,000 in cash and approximately $1.4 million worth of cocaine. *Id.* Numerous phone conversations with the owner of the drugs and organizer of their transport implied a larger role in the drug transactions. *Id.*

Measuring Mr. Anay-Castillo's role against his relevant conduct allows for a proper minor role reduction. Following dicta in *DeVaron*, in assessing Mr. Anay-Castillo's role in the conduct he is held responsible for, he was merely a courier and should receive a minor role departure. Mr. Anay-Castillo's involvement was in one level of this conspiracy and he had one job; ride in a boat as a joint, temporary custodian of illegal narcotics from point A to point B. He was paid a fraction of the drugs' value, held no equity interest, took no part in planning, and solicited no further role. His only role was to attempt to deliver cocaine as he was instructed and nothing more. He was not the master of the vessel, nor did he offer any special mechanical skill. Not a planner, nor at a conspiracy pole, he acted in no more advanced capacity.

Mr. Anay-Castillo's role is minor compared to Floriano Floresmilo Cacierra-Rua, who was the master of the vessel interdicted. He was not an organizer as the man known as "El Colombiano," nor was he in any way tasked with planning the route in which the three hapless co-defendants would travel. Mr. Anay-Castillo took orders and held onto one of two steering tillers attached to the motor of the boat and nothing more. Those that held an equity interest in the cocaine seized were nowhere near the drugs when the task failed and those who devised this plan lacked the confidence in its success to accompany their product on its journey.

Similar to *Vicente Fernandez*, Mr. Anay-Castillo was unaware of the quantity he transported and had no decision–making authority over the cocaine. This much was relayed truthfully to the Coast Guard and respectfully, the implication is a safe one given his admission immediately that he knew he was transporting drugs. Mr. Anay-Castillo did not have a relationship or commitment to the other conspirators but for the fact that he shared a boat with them, and considering the polar ends analysis of *Vicente Fernandez,* Mr. Anay-Castillo was replaceable. Like a common carrier transporting goods from a manufacturer to a store, he was a fungible cog in the chain of distribution subject to replacement.

Considering *DeVaron*, Federal Sentencing Guideline § 3B1.2, and this Court's learned discretion per 3B1.2 Application Note 3(C), Mr. Anay-Castillo requests a 2 level reduction for minor role.

## **MOTIONS FOR DEPARTURE**

### **Mr. Anay-Castillo is eligible for consideration for a departure under USSG § 5H1.3 for his strained emotional condition prior to undertaking his crime.**

United States Sentencing Guideline 5H1.3 reads in relevant part, "Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." In this case, Mr. Anay-Castillo submits that his emotional condition in the months leading to his crime and immediately beforehand, provides for a basis for this court to depart or vary downward from the calculated guideline recommendation.

Mr. Anay-Castillo is a 43 year old man who lived in San Lorenzo, Ecuador with his wife, children, and his 78 year old mother. Mr. Anay-Castillo has always been the sole provider for his family, thereby allowing his wife to care for his children as a homemaker. While he has been a provider, this is relative to the conditions in which he lived. $150 was an average earning per month; all of which was used to pay for life's necessities. With this amount of income, very little room was left for unexpected circumstances. Furthermore, $150 a month doesn't offer a legitimate prospect of obtaining Ecuadorian healthcare at the current $70 per month per person rate.

Unlike those in the United States suffering from financial distress, the benefit of being treated in an emergent state, or obtaining a major necessary surgery is nearly nonexistent for the poor in Ecuador. In spite of recent changes to the Ecuadorian national healthcare plan managed by their version of social security, if one living in Ecuador cannot afford $70 per month for healthcare, they must either pay a significant sum up front or go without. This Cliff Note on Ecuadorian healthcare is relevant to Mr. Anay-Castillo's bid for a departure under 5H1.3 because of the need for funds to pay for a hip surgery for his elderly mother.

All of his life Mr. Anay-Castillo has had an incredible bond with his mother. After Mr. Anay-Castillo's father abandoned the family, Mr. Anay-Castillo's mother took on both parental roles, regularly going without so that she could provide for her son. As such, when she suffered a broken hip nearly 8 months ago causing her to become bed ridden, Mr. Anay-Castillo was devastated. This feeling of hopelessness and inability to help the woman who gave him everything was one Mr. Anay-Castillo could not bear. As time progressed so too did his feeling of helplessness and shame. Ultimately, his need to

help her outweighed his conscious, lawful decision-making when he chose commit his crime.

Mr. Anay-Castillo has led a lawful life for 43 years. His family is not connected to organized crime, nor is he a violent man. Decisions to obey the law are second nature to Mr. Anay-Castillo and his family. The decision to risk life and limb to transport drugs, especially when the total pay would have been $7000, was not one made of sound mind, nor was it made for want. This decision was made based on need by a man desperate to provide for his mother after 8 months' effort to provide by legitimate means failed. The stress and fear of losing his mother to pneumonia, bedsores, amongst other ailments associated with one who is bed ridden, broke him.

Considering Mr. Anay-Castillo's compromised mental and emotional condition prior to and at the time he undertook his crime, he respectfully requests this court depart or in the alternative, vary downward, based upon United States Sentencing Guideline 5H1.3.

**Mr. Anay-Castillo is eligible for consideration for a departure departure under USSG § 5K2.0(c) as USSG § 5H1.3 when combined with USSG § 5H1.2 and USSG § 5H1.5 provide sufficient basis for departure.**

United States Sentencing Guideline 5K2.0(c) allows for the court to "depart from the applicable guideline range based on a combination of two or more offender characteristics or other circumstances, none of which independently is sufficient to provide a basis for departure…." The offender characteristics or other circumstances, taken together, must make the case an exceptional one, and each such characteristic or

circumstance is present to a substantial degree and the characteristic or circumstance is identified as being a permissible ground for departure.

Mr. Anay-Castillo respectfully submits that if this court finds his emotional state at the time of his crime lacks sufficient basis for a departure or variance, that this court consider his emotional state in combination with his desperate financial condition from lack of steady work and an inability to obtain better employment due to a lack of educational or vocational skills to set him apart from work competition.

Mr. Anay-Castillo has an eighth grade education. He had aspirations as a child to educate himself so that he could have a better life than the poverty stricken one he knew. Like many others in his hometown, his plans were derailed when he was forced to quit school to help care for his family. Like the masses in San Lorenzo, his lack of an education limited his job prospects to fishing or other nominal jobs that paid next to nothing. With a large portion of the population lacking an education or skills to pursue other endeavors, fishing is predominantly turned to as a way to survive. As such, the supply of fishermen outweighs their demand. This situation causes fishing work to be scarce and without an education or know how to do other things, individuals like Mr. Anay-Castillo succumb to common rules of economics and are relegated to work for less of the financial take after a trip and those who won't negotiate their take are left without work.

Mr. Anay-Castillo's fragile mental state considering his mother's ailing health when combined with very little work and no education allowing for him to seek alternate employment offered a Molotov cocktail ripe for a decision of desperation. This is a man who has known nothing but poverty from the time he was a child. Arguably, were he the

kind of man to seek riches or lavish goods, he would have committed a crime of this variety long ago.  Respectfully, implicit with his mother's condition, lack of steady work, and no ability to educate himself, his decision was need based versus want based.

In consideration of the above, Mr. Anay-Castillo respectfully requests this court to consider a departure under USSG § 5K2.0(c) as USSG § 5H1.3 when combined with USSG § 5H1.2 and USSG § 5H1.5 provide sufficient basis for departure.

## APPLICATION OF THE 18 USC 3553(a) SENTENCING FACTORS

**The nature and circumstances of the offense and the history and characteristics of Mr. Anay-Castillo**

Mr. Anay-Castillo is 43 years old with no criminal history.  He is a true first time offender.  Born and raised in Ecuador, Mr. Anay-Castillo was raised in conditions the like of which are typically seen on infomercials asking for a monetary pledge to provide basic nutritional needs,  plumbing, or basic medical care.  Food was scarce as all that was readily available was what was brought home with the day's fishing catch.  Two bad days in a row and the family went without.  Mr. Anay-Castillo's family did not enjoy the simple pleasures of electricity, unable to cool themselves on hot tropical days and without the light of an electric lamp to see should they be woken in the middle of the night.  Showers taken for granted by most in our country were not available to Mr. Anay-Castillo and his family when he was a child.  Running water was a foreign concept for them, rather having to dig raw holes in the beach to store water for cooking, washing clothes, and bathing.  Often these tasks were performed using the same water.

The idea of receiving an education was more of a dream than a reality for Mr. Anay-Castillo's family.  While Mr. Anay-Castillo was able to attend grade school for a

brief period, he was ultimately forced to quit at the eighth grade level. Absence of a father's income made putting food on the table a more pressing need than multiplication tables. With no education, and no real opportunity to receive one, Mr. Anay-Castillo followed the trend of many and became a fisherman by default.

Mr. Anay-Castillo's father abandoned his family when he was ten years old. Without his father's income Mr. Anay-Castillo, his siblings, and his mother were forced to pool their incomes to survive. While his father would visit on occasion, his absence stung Mr. Anay-Castillo. For all intents and purposes, the absence of Mr. Anay-Castillo's father, in part robbed him of what childhood he otherwise would have had. Mr. Anay-Castillo shares a closeness with his mother that is rarely found. He has maintained a tradition since childhood of serenading her on Mother's Day and would go into her room every morning to spend time with her. He has relayed on several occasions that while he is shameful for what he has done and for what this has brought upon his family, his real devastation lies in how it has made his mother feel.

As an adult Mr. Anay-Castillo has been an excellent father to his children and has provided for them as best he can. He describes his relationships with all five of his children as being very good. His older children that are aware of this situation are very upset over what their father has done. Mr. Anay-Castillo is remorseful for his actions on a number of levels, perhaps the noblest of which is his recognition that the drugs he was trafficking are the same drugs he encourages his own children to avoid. He is remorseful in that not only has he committed the out of character act that he has, but he has come to grip with the fact that what he was transporting puts others in danger through violence

and the health effects cocaine has on an individual. He has reconciled that his actions may result in his children growing up fatherless; just as he did.

As was described in an objection earlier in this memorandum, the motive for Mr. Anay-Castillo's crime was borne out of his mother's need for a hip surgery. With no money and illusory healthcare for the poor, Mr. Anay-Castillo's mother would not have gotten the surgery she needs. While Mr. Anay-Castillo recognizes his wrongs and understands that need based crime is still crime, he throws himself at the mercy of the court and humbly asks that it consider his motives as less egregious than the motive of one seeking riches.

His crime is simple. He was desperate for money and was contracted to meet at a location, board a boat, and travel to a required destination to deliver drugs. Mr. Anay-Castillo didn't manufacture the cocaine, didn't distribute the cocaine to a purchaser, had no equity interest in the drug, wasn't tasked with any special responsibility, was given no leadership role in the conspiracy, and had absolutely no decision making authority. He may as well have been a lock on a briefcase carrying cocaine across the United States. He was to be paid $2000 prior to his trip and $5000 upon its successful conclusion. Considering that one kilogram of cocaine sells for $66,000 retail in the United States and at least 725 kilograms are said to have been on the boat, the nominal pay Mr. Anay-Castillo would have earned for his deeds illustrates just how low he was on the conspiracy totem pole. Zill, Oriana and Bergman, Lowell. "Do the Math:Why the Illegal Drug Business is Thriving." *Frontline.*Web. 13 May. 2013. http://www.pbs.org/wgbh/pages/frontline/shows/drugs/special/math.html.

While an excellent case can be made for Mr. Anay-Castillo's role in his offense being minor as compared to those other co-conspirators on the boat, never before has the mitigating role provision of the sentencing guidelines been more clear than it very likely will be after the impending amendment vesting on November 1, 2015. Despite the likely change, Mr. Anay-Castillo will be sentenced with this Court's review and analysis of the current version of sentencing guideline 3B1.2. However, it is worth painting a picture of what 3B1.2 will most assuredly be after November 1st as Mr. Anay-Castillo respectfully requests this court consider his minor role in this conspiracy when considering a variance under 3553(a).

The Federal Sentencing Commission reviewed the application of 3B1.2 over the course of all Federal districts and found that "mitigating role is applied inconsistently and more sparingly than the Commission intended." United States Sentencing Commission, <u>Amendments to Sentencing Guidelines</u> (Proposed Amendment to Mitigating Role), § 3B1.2 (April 30, 2015). If approved, 3B1.2 will adopt the Seventh and Ninth Circuits interpretation of "average participant," meaning that an average participant only includes those persons who actually participated in the criminal activity at issue in the particular defendant's case. *Id.* In adopting this interpretation, the Commission disapproved consideration of the "universe of persons participating in similar crimes" as compared to the applicable defendant's role; the interpretation of the First and Second Circuits. *Id.* citing *United States v. Santos,* 357 F.3d 136, 142 (1st Cir. 2004). Simplified, the new analysis for a Court is to compare the defendant to the average participant in the crime at issue, determine who the participants includable in the crime at issue are, and determine whether the defendant before them is substantially less culpable. In deciding whether to

apply a minimal or minor role departure, Application Note 3(C) recommends the Court to consider the "following non-exhaustive list of factors:"

(i)     the degree to which the defendant understood the scope and structure of the criminal activity;

(ii)    the degree to which the defendant participated in the planning or organizing the criminal activity;

(iii)   the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)    the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v)     the degree to which the defendant stood to benefit from the criminal activity.

The Commission goes on to say in Application Note 3(C) that a defendant who does not have a proprietary interest in the criminal activity and is simply being paid to perform a task should be considered for an adjustment under this guideline.  This is irrespective of whether his role is indispensible or essential.

In moving for a variance for Mr. Anay-Castillo based upon the nature and circumstances of his offense, he was not a master of the vessel he was aboard, nor was he tasked with any navigational responsibilities.  As mentioned before, he was tasked with a dispensable role of steering a boat in the direction he was told.  While Mr. Anay-Castillo is certainly a co-conspirator with his shipmates, as indicated in the Government's

indictment, he is accused and has pled to a count of conspiracy with his shipmates and with "other persons both known and unknown to the Grand Jury." It is common sense that this conspiracy beyond Mr. Anay-Castillo's shipmates included many individuals with much more responsibility than Mr. Anay-Castillo, and those who held a significant equity interest in the illegal narcotics being trafficked. There must have been those who labored and used their expertise to grow the coca leaf. There must have been individuals tasked with planning for the transportation of the finished cocaine from its place of origination to the boat Mr. Anay-Castillo was aboard. Finally, other individuals planned the route for the three lowly mariners to sail, and ultimately someone would have received the cocaine and distributed it further had this conspiracy met completion.

Mr. Anay-Castillo certainly appears to be the individual envisioned by the Sentencing Commission when they elected to amend 3B1.2. Mr. Anay-Castillo understood his role and nothing more. He certainly was no organizer or leader. Mr. Anay-Castillo had no decision making responsibilities in this conspiracy, literally held a steering tiller on the boat and nothing more, and would have benefitted to the tune of $7000 for risking at least 10 years in an American prison for moving drugs valued at a little under $47,850,000 (725 multiplied $66,000 per kilogram of cocaine). Zill, Oriana and Bergman, Lowell. "Do the Math: Why the Illegal Drug Business is Thriving." *Frontline*. Web. 13 May. 2013. Respectfully, Mr. Anay-Castillo submits that the above grounds based on the pending changes to the minor role guideline provide an excellent basis for a variance under 3553(a).

No, no one forced Mr. Anay-Castillo to perform the acts that he did. He wasn't threatened or directly coerced, no danger would have come to him or his family had he

declined the offer.  In no way is Mr. Anay-Castillo trying to shuck responsibility for his wrongdoing.  He was a son under the unimaginable stress of the very real prospect of losing his mother prematurely.  While the explanation of his actions is delicate, to properly explain the nature and characteristics surrounding him and his offense, his mental state must be considered.  Life's circumstance and the ultimate decision to commit the crime was terrible; Mr. Anay-Castillo is not.

A defendant may be eligible for a downward departure under Federal Sentencing Guideline 5K2.20 if the "defendant committed a single criminal occurrence or single criminal transaction that was committed without significant planning; was of limited duration; and represents a marked deviation by the defendant from an otherwise law-abiding life."  A court may not depart downward pursuant to 5K2.20 if the offense involved serious bodily injury or death, defendant discharged a firearm or otherwise used a firearm or dangerous weapon, the instant offense is a serious drug trafficking offense, or the defendant has more than one criminal history point….  The plain language of Commentary Application Note 1 in defining "serious drug trafficking offense" states, "[s]erious drug trafficking offense means any controlled substance offense *under title 21, United States Code*, other than simple possession under 21 U.S.C. 844, that provides for a mandatory minimum term of imprisonment of five years or greater, regardless of whether the defendant meets the criteria of 5C1.2 (Limitation on Applicability of Statutory Mandatory Minimum Sentences in Certain Cases)."  Commentary Application Note 3 allows the Court to consider the defendant's mental and emotional condition, employment record, motivation for committing the offense, amongst others.

While Mr. Anay-Castillo may be precluded under 5K2.20 for a departure for his act being aberrant in nature due to his crime being punishable by a minimum mandatory 10 year term, this Court could consider the factors enumerated in this guideline for a variance under 3553(a).  As noted in numerous other sections of this memorandum and in the hope to not belabor the point, Mr. Anay-Castillo's emotional condition at the time of his offense was affected by his concern for his ailing mother and providing for his family.  Having otherwise in his life earned an honest day's pay for an honest day's work, Mr. Anay-Castillo had found it difficult to earn a wage near the time of his crime.  Mr. Anay-Castillo's mother had recently suffered a broken hip after a fall.  Given that she is elderly, her broken hip was a critical occurrence in terms of her health and chances of recovery.  Whether his belief was misplaced or not, Mr. Anay-Castillo turned to his criminal act in the hope of earning enough money to pay for medical care for his mother, her after-treatment, in addition to providing money for his family.

Mr. Anay-Castillo is not a hardened drug trader driven by a thirst for riches, nor was he being paid a hefty sum for his deeds.  While there is no justification for committing such a crime (and Mr. Anay-Castillo has never attempted to do so in all my time of representation), his frame of mind at undertaking his crime is almost certainly less egregious than a desire for power and a lavish lifestyle.  His motivation was in many ways good-natured, not recognizing until now the tremendous wake the drug trade creates.  While the obvious retort is that healthcare is available in Ecuador and for the nominal sum of $70 per month, when one makes $150 per month healthcare is a luxury not likely afforded and was unattainable for Mr. Anay-Castillo and his family at the time of his crime.

**The need for the sentence imposed to promote certain statutory objectives to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.**

While Mr. Anay-Castillo's crime involves a large quantity of cocaine, it is arguable that a sentence the likes of what Mr. Anay-Castillo is facing is in accord with the deed. This notion would be reinforced when one considers that if Mr. Anay-Castillo had moved the same amount of cocaine across land, he would be eligible for the two-point safety valve reduction that he is getting **AND** the glass floor that is a minimum mandatory sentence would be shattered. This begs the question as to why one without a criminal history who traffics a narcotic across our domestic dirt is potentially eligible for a markedly lesser sentence than a poor fisherman from a third world country who is similarly situated in terms of safety valve eligibility. This, however, is a question for another day and another branch of our government. To say that trafficking 725 kilograms of cocaine is serious, is an understatement. That said, Mr. Anay-Castillo respectfully submits that the calculated guideline sentence range of 135-168 months overstates a punishment suitable for the crime. Mr. Anay-Castillo cannot receive a sentence below 10 years. Because he was on a boat he cannot break the glass floor of the 10 year minimum mandatory sentence required of an indictment under 46 USC 70503(a)(1) under the penalty provision of 21 USC 960(b)(1)(B)(ii) and because of his pawn-like role in this conspiracy he does not possess information worthy of a substantial assistance motion from the government. As such, he is resolved to stare down the barrel of a guideline recommendation that exceeds what would more accurately reflect the seriousness of the offense; a ten year sentence.

When the United States Coast Guard made contact, no effort was made to elude apprehension and in no way did Mr. Anay-Castillo attempt to mislead the United States' investigation in any capacity. He was forthright with information when interviewed by the Coast Guard and reaffirmed his account of the incident in total when he proffered to the FBI on February 10, 2015. Mr. Anay-Castillo has no criminal history and, until now, made an honest, albeit nominal, living as a fisherman in Ecuador.

Mr. Anay-Castillo's crime was borne out of a feeling of necessity rather than greed. Mr. Anay-Castillo understands the err of his ways as this has affected him in more ways than the risk of incarceration. No sentence doled out can match the shame and grief he feels for having committed this crime and in turn separating him from his family. Mr. Anay-Castillo's mother will never see her youngest son again. What began as a mission, albeit an illegal one, to aid his mother's medical condition turned into life sentence for her. If Mr. Anay-Castillo were a career offender or had an otherwise significant criminal history, it would be more incumbent on this court to issue a sentence to ensure that Mr. Anay-Castillo recognizes that respect for the law must be appreciated. The fact is, he is a law-abiding man but for this, his worst ever deed. Mr. Anay-Castillo submits that he very much respects the law. Implicit in the previous sentence is the logic that given his living conditions, proximity to the water and a source country of cocaine, if Mr. Anay-Castillo took a flippant attitude with living a law abiding life, he would have trafficked drugs and been caught for it long before now.

For Mr. Anay-Castillo, an incarceration sentence over the 10 year minimum mandatory would not be an effective punishment. Attorney General Eric Holder gave a speech on August 12, 2013 addressing long drug sentences. Attorney General Holder

acknowledged that a sentence must "promote public safety and deterrence while at the same time ensuring efficiency and fairness." He noted that "[t]oo many people go to too many prisons for far too long for no good law enforcement reason" and that our justice system needs to "ensure that incarceration is used to punish, to rehabilitate, and to deter – and not simply warehouse and forget." Respectfully, incarceration of Mr. Anay-Castillo over the statutorily mandated 10 years would be to incarcerate someone "too long for no good law enforcement reason." While some hardened, vicious criminals may receive just punishment through warehousing for a number of years, Mr. Anay-Castillo in no way fits that mold.

Attorney General Holder stated in his aforementioned memorandum that certain minimum mandatory drug charges should be reserved for "serious, high-level, or violent drug traffickers." Memorandum To The United States Attorneys And Assistant United States Attorneys For The Criminal Division (Aug. 12, 2013) (Attorney General Eric Holder). While the amount of drugs at issue in this case is significant, Mr. Anay-Castillo is not a high level or violent drug trafficker. On page two of Attorney General Holder's memorandum he addresses criteria of those who should not be charged with minimum mandatory drug charges. Seemingly, the spirit of the criteria is to say that those meeting such criteria should not be subject to such extreme sentences as called for in the minimum mandatory statute. Mr. Anay-Castillo was not violent, nor did he have a weapon. Mr. Anay-Castillo was not a leader, manager or a supervisor in his crime nor did he have any tie to this drug organization. His criminal history point total is zero. Attorney General Holder said "[l]ong sentences for low-level, non-violent drug offenses do not promote public safety, deterrence, and rehabilitation." Respectfully, whether the

long sentence is imposed by a minimum mandatory prison term or a dictate of a guideline, a longer than necessary prison term will serve no benefit. Mr. Anay-Castillo respectfully requests this Court to consider the spirit of Attorney General Holder's August 12, 2013 memorandum, his lack of a criminal history, and cooperation when fashioning a sentence for him and respectfully submits that a minimum possible sentence is sufficient.

**To afford adequate deterrence to criminal conduct and to protect the public from further crimes by Mr. Anay-Castillo [18 USC 3553(a)(2)(B)&(C)].**

Statistically, Mr. Anay-Castillo, has a very low risk of reoffending in the future. As such, an incarceration sentence over the 10 year minimum mandatory is not required to deter or to protect the public from future crimes by Mr. Anay-Castillo. In 2004, the US Sentencing Commission issued a report tracking recidivism for federal offenders.[1] The Commission's research resulted in several key findings as they relate to Mr. Anay-Castillo and individuals in similar positions. Specifically, the Commission's research found that:

1. Offenders who are in criminal history category 1, have a substantially lower risk of recidivating than do offenders in higher criminal history categories.

2. Criminal history points provide the best measure on recidivism. Mr. Anay-Castillo has zero criminal history points. As the number of criminal history points increase, so does the prospect of recidivism. Offenders with zero criminal history points, have only a 3.6% chance of being convicted of a new crime.

3. Age is a key factor in predicting the likelihood that an offender will re-offend.

---

[1] *See* The Commission's Report which is entitled, *Measuring Recidivism: The Criminal*

Recidivism rates decline as age increases. For category I criminal history offenders under age 21, the recidivism rate is 29.5%, while offenders over 50 have a 6.2% recidivism rate.  Criminal History Category I offenders who are between the ages of 41 - 50 years old, Mr. Anay-Castillo's demographic, only re-offend 6.9% of the time.

4. Criminal History Category I offenders using illicit drugs within one year prior to their offense have a higher recidivism rate (21.9%) than those not using illicit drugs (10.8%).  Considering Mr. Anay-Castillo's reported lack of drug use and only very minimal use of alcohol, his risk of recidivism would be more in accord with the 10.8% number.

5. Non-violent offenders (fraud, larceny, and drug traffickers) are less likely to recidivate than violent offenders (robbery and firearms). Criminal history category I drug offenders only re-offend 16.7% of the time.

6. Cooperation is also a key factor in determining if an offender will re-offend. Criminal history category I offenders providing "substantial assistance" to the government only re-offend 11.5% of the time.  Though no 5K1.1 motion is filed in his case, Mr. Anay-Castillo voluntarily spoke to the United States Coast Guard, proffered to the FBI, and ultimately offered up the information he has.  While this statistic is not directly on point, his efforts bring him within the spectrum of the statistic's relevance in that he cooperated in spite of not receiving a sentence reduction resulting therefrom.

Mr. Anay-Castillo has zero criminal history points reflecting a 3.6% chance that he will commit a new law violation and a 11.8% chance that he will violate court-imposed supervision. Arguably, he is less likely than the 11.8% recidivism chance in that he will

immediately be deported upon conclusion of his sentence.  This, coupled with paragraphs 1-6 above, make his likelihood of re-offending unlikely.

While argument could be made that if this Honorable Court sentences Mr. Anay-Castillo to a ten year criminal term as opposed to what is called for in the guidelines, others considering similar crimes might be more apt to carry them out.  While the argument is plausible on its face, studies show that length of incarceration has no effect on deterring crime.  "There is generally no significant association between perceptions of punishment levels and actual levels … implying that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms."  Gary Kleck, et al, *The Missing Link in General Deterrence Theory,* 43 Criminology 623 (2005).  While a *certainty* of punishment may have a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effect … Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006).

**To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

Mr. Anay-Castillo reported no specialized skills and absent his fishing history, he hasn't had an opportunity or means to obtain beneficial work skills or an education.  Mr. Anay-Castillo did express a desire to learn English, carpentry, computers, or basically anything he could get his hands on while incarcerated.

Given his eventual return to his native Ecuador at a relatively young age, learning a skill or trade while incarcerated can only benefit Mr. Anay-Castillo.  During his

presence interview Mr. Anay-Castillo expressed his eagerness to learn the English language, study carpentry, computers, or anything else offered to better himself. Given the tools to provide a skill or service aside from fishing, in theory, should help Mr. Anay-Castillo to earn a better and more consistent living.

### The Sentencing Range Established by the Sentencing Commission

According to the PSR, Mr. Anay-Castillo's criminal history category is one, totaling zero criminal history points. Mr. Anay-Castillo's recommended guideline level is 33 equating to a guideline range of between 135 months and 168 months.

### The Need to Avoid Unwarranted Disparities

The Court should "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Koon v. United States,* 518 U.S. 81, 113 (1996). For all cocaine offenders, only 45.6% are sentenced within the applicable guideline range. Placement of Sentences Under U.S.S.G. § 2D1.1 –FY 2010/2011, Table 1 (found at-http://www.fd.org/docs/select-topics---sentencing/placement-of-sentences-under-u-s-s-g-2d1-1-fy-2010-2011.pdf?sfvrsn=6). 19.5% of the time cocaine offenders are sentenced below the applicable guideline range on non-government sponsored sentences. *Id.*

While disparity must be considered, Mr. Anay-Castillo's menial role allows considerable leeway for this Honorable Court without imposing a disparate sentence. Mr. Anay-Castillo is less culpable than his co-conspirator, Floriano Floresmilo Cacierra-Rua, as his role was less involved. Mr. Anay-Castillo had an undefined, unspecialized role in this conspiracy, whereas Mr. Cacierra-Rua was the vessel's master. In fashioning a sentence, "it is clear that codefendant disparity is not a per se 'improper' factor." *United*

*States v. Smart*, 518 F.3d 800 (10th Cir. 2008)(citing *Gall v. United States,* 552 U.S. 38 (2007). In Smart, the defendant was convicted after trial of inducing a minor to engage in sexually explicit conduct. *Id.* Smart's sentencing Court concluded that his guideline range of 168 to 210 months' imprisonment overstated the seriousness of his offense, and varied downward, imposing a sentence of 120 months' imprisonment. *Id.* The District Court Judge committed no error and noted that Smart should not be sentenced to more prison time than the leader of the group of people. *Id.* at 802. Smart was less culpable than the leader of the group who lived with the victim, and the Court varied below his guidelines after Smart's trial and in doing so committed no error in imposing a disparate sentence. *Id.*

Since co-defendant disparity is not violative of 3553(a), it would be appropriate to sentence Mr. Anay-Castillo to a lesser sentence than Floriano Floresmilo Cacierra-Rua or other co-defendants holding greater roles in the conspiracy. *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008) ("district courts have discretion, in appropriate cases, to align codefendants' sentences somewhat in order to reflect comparable degrees of culpability—at least in those cases where disparities are conspicuous and threaten to undermine confidence in the criminal justice system"). Given that Mr. Anay-Castillo is charged with the same crimes as Mr. Cacierra-Rua but lacks the captain/master enhancement under USSG 2d1.1(b)(3), a lesser sentence would not be disparate in accordance with *Martin.* Considering *United States v. Martin,* Mr. Anay-Castillo requests a sentence in accord with the relative culpability of each defendant in this conspiracy.

**Conclusion**

For the foregoing reasons, Mr. Anay-Castillo respectfully submits that a 10 year prison term is sufficient but not greater than necessary to comply with the statutory directives set forth in 18 U.S.C. § 3553.

Respectfully submitted this 17th Day of July, 2015.

> */S/ Jason M. Mayberry*
> MAYBERRY LAW FIRM
> Jason M. Mayberry
> FBN- 36212
> Attorneys for the Defendant
> 14004 Roosevelt Boulevard
> Suite 614-A
> Clearwater, FL 33762
> Ph-727-771-3847
> Fx-727-755-0098

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a copy of the foregoing has been furnished by CMECF to the Office of the United States Attorney, this 17th day of June, 2015.

> */S/ Jason M. Mayberry*
> JASON M. MAYBERRY, Esq.